RECEIVED
IN LAKE CHARLES, LA
APR 20 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| EMPIRE GENERAL LIFE ASSURANCE CORPORATION | : | DOCKET NO. 04 CV 2061 |
| VS. | : | JUDGE MINALDI |
| ROBIN ZARATE-SWAIN, Individually, and as Administratrix of the Estate of Earl Swain, Jr., LINDA S. HOFFPAUIR, and MELISSA S. CHISM | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a motion for summary judgment [doc. 31] filed by plaintiff, Empire General Life Assurance Corporation ("Empire"). At issue in this suit is the entitlement to insurance proceeds of a policy on the life of Earl Swain, Sr. ("Swain Sr.") who died in a boating accident, along with his son Earl Swain, Jr. ("Swain Jr.") and his grandson Drake Hoffpauir.

### Background[1]

On March 20, 2002, Empire issued life insurance policy number 00240962 ("the policy") to Swain Sr. in the amount of $300,000. Named as beneficiaries under the policy were Swain Sr.'s three children, Linda Hoffpauir ("Hoffpauir"), Melissa Chism ("Chism"), and Swain Jr. *Affidavit of Empire General Life Assurance Corporation*, at p. 2 ("Empire Affidavit") and Policy attached thereto as Exhibit A. Under the section entitled "Payment of Proceeds," the policy

---

[1] The facts are presented in the light most favorable to Zarate-Swain as the party opposing summary judgment.

1

states, "If the Owner names more than one person in the class of Beneficiaries, and one or more of the class die, the living will share equally unless the Owner directed otherwise." *Id.* Empire never received any notice that Swain Sr., as Owner, wished to change this provision of the policy. *Id.*

On the morning of April 22, 2003 Swain Sr., Swain Jr., Drake Hoffpauir (Hoffpauir's son), Gabriel Zarate and Nicolas Zarate (the children of Swain Jr.), left Cameron, Louisiana by boat for a fishing trip in the Gulf of Mexico. Once in the Gulf, and while attempting to tie up to an oil rig, a wave crashed over them, capsizing the boat and throwing all five occupants into the water. *Deposition of Gabriel Zarate*, p. 10 ("Gabriel Zarate Depo."). Initially, all five victims were able to remain afloat by grabbing hold of an ice chest which also had been thrown from the boat.[2] *Id*; see also *Deposition of Nicolas Zarate*, pp. 7-8 ("Nicolas Zarate Depo."). Still gripping the chest, they attempted to swim back to the boat and the rig but the current was too strong. *Gabriel Zarate Depo.*, at p. 8, l. 22-23. As they drifted with the chest, Swain Sr. was breathing heavily but otherwise remained quiet. *Id* at p.13, l. 19-20. At one point he told the other four that he loved them, then approximately "half way through their trip" he let go of the chest. *Id* at p. 10, l. 22-23, p. 13, l. 7-8. After seeing Swain Sr. drifting away while floating on his back with his hands and legs submerged in the water, Gabriel Zarate asked his father if he should try to retrieve him. Swain Jr. told Gabriel to let him go and later told the boys that Swain Sr. had passed away. *Id* at p. 10, l. 25, p. 21, l. 4-5.

---

[2] The three children also wore life jackets that helped them remain afloat, although Drake Hoffpauir removed his shortly before disappearing from the chest. *Gabriel Zarate Depo.*, at p. 5, l. 19-20. Neither Swain Sr. nor Swain Jr. had life jackets on at any time during the trip. *Id.*

2

Although Gabriel Zarate was unable to recall precisely how much time elapsed between the disappearance of Swain Sr. and that of Swain Jr., he did remember some events which occurred after Swain Sr., but before Swain Jr., left the chest. First, a helicopter flew overhead. *Gabriel Zarate Depo.*, at p. 15, l. 10-12; see also *Affidavit of Gabriel Zarate*, at p. 2. Swain Jr. and the three boys waived their hands in an attempt to flag it down but it soon disappeared without making contact. *Affidavit of Gabriel Zarate*, at p. 2. After the helicopter disappeared, the boys listened to Swain Jr. tell stories about his past and joined him in singing a number of hymns. *Id.* Then a boat passed within their view, but again the four remaining victims were unable to attract its attention. *Id;* see also *Gabriel Zarate Depo.*, at p. 15, l. 10-12. After the boat disappeared from view, a thunderstorm passed overhead. *Id.* Finally, Drake Hoffpauir began to complain about being cold and, in response, Swain Jr. removed his clothes and draped them over Drake to provide warmth. *Gabriel Zarate Depo.*, at p. 12, l. 11-12. At some point in time after Swain Jr. relinquished his clothes, the boys realized that he also had disappeared from the chest. Gabriel Zarate estimated that this occurred "three-quarters of the way through the trip." *Id* at p. 17, l. 9, p. 24, l. 9-10.

After Swain Jr. disappeared, Drake Hoffpauir began complaining about his life vest. He removed his life jacket and subsequently disappeared. *Affidavit of Gabriel Zarate*, at p. 2. Thereafter, a boat rescued Gabriel and Nicolas Zarate. *Id.* The bodies of the other three victims were discovered by the Coast Guard later in the day.

Dr. Terry Welke, Calcasieu Parish Coroner, performed postmortem external examinations of both Swain Sr. and Swain Jr. *Deposition of Dr. Terry Welke*, at pp. 5-11, 14, 17-18 and Exhibits 1 and 2 attached thereto ("*Welke Depo.*"). In both instances, Dr. Welke opined that the

3

men had died "as the result of drowning after being submerged in the Gulf of Mexico for an undetermined amount of time." *Id* at pp. 5-11 and Exhibits 1 and 2 attached thereto. He made identical findings with respect to the lividity and rigidity of both bodies, indicating no discernable difference in the times of death. *Id* at p. 28. Although, Dr. Welke included times of death on the postmortem examination reports and death certificates of 2:00 p.m. for Swain Sr. and 4:00 p.m for Swain Jr., those times were not the product of his own medical evaluation. *Id* at pp. 31-36 and Exhibits 3 and 4 attached thereto. They were merely estimations given to him by Zeb Johnson, a funeral homeowner and investigator for the Coroners Office, after speaking with the survivors. *Id.*

On or about June 2, 2003, Empire received the death certificate of Swain Sr. along with notice of claims on the policy on behalf of Linda Hoffpauir and Melissa Chism. As part of its investigation of Ms. Hoffpauir's and Mrs. Chism's claims, Empire contacted Mrs. Chism, interviewed her on June 20, 2003 and obtained a signed statement from her. Mrs. Chism's statement included the following: (1) other than his Diabetes, Swain Sr. had no other serious medical problems; (2) Swain Sr. was a non-smoker and never used alcohol; (3) Swain, Sr. and Swain, Jr. were in the same boat at the same time when it capsized off the coast of Cameron Parish, Louisiana.

In June 2003, Empire contacted Swain Sr.'s personal physician, Dr. Francis Bride, to obtain Swain Sr.'s medical records. *Empire Affidavit*, at p. 2. Around the same time, Empire also communicated with the Louisiana Wildlife & Game Department and verified that it did not have any boating accident report in connection with the deaths of Swain Sr, Swain Jr. or Drake Hoffpauir. *Id.*

4

In July 2003, Empire obtained the coroners report from the Cameron Parish Coroner's office. *Id.* Empire also contacted the Galveston station of the United States Coast Guard and requested all reports it had in connection with the accident. *Id.* The U.S. Coast Guard later notified Empire that it had no records responsive to its request and, more specifically, that it had neither witness statements nor records indicating which body had been found first.

On September 9, 2003, Empire paid out the entire proceeds of the policy, plus interest, as follows: $153,716.63 to Ms. Hoffpauir and $153,716.63 to Mrs. Chism. In March, 2004, Robin Zarate-Swain, the surviving spouse of Swain Jr., submitted a claim to Empire on behalf of Swain Jr.'s estate. Having already distributed the proceeds of the policy some six months prior, Empire immediately filed this action in which it seeks a declaratory judgment in its favor and against defendants, confirming that there is no payment due to the Estate of Swain Jr. Alternatively, Empire seeks a declaratory judgment confirming that if payment is due to the Estate of Swain Jr., any such amount is due and payable to Empire from Hoffpauir and Chism as a result of payment of a thing not due to them by Empire. *See Plaintiff's Complaint*, ¶ 17-18. Defendant subsequently filed a counterclaim seeking penalties and attorney's fees under LSA-R.S. 22:656 and 22:657 for failure to pay timely her portion of the proceeds.

## Standard of Review Under FRCP 56

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548,

5

2552-54, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999).

When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his

pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

## Law and Analyisis

*A)    A genuine issue of material fact exists with respect to whether or not Swain Jr. survived Swain Sr.*

Louisiana's Simultaneous Death Act ("LSDA") states:

> Where the individual insured and the beneficiary designated in a life insurance policy or policy insuring against accidental death have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, unless otherwise expressly provided in the policy.

LSA-R.S. 22:645. In short, because it is undisputed that the policy does not expressly provide for an alternate distribution of proceeds upon the occurrence of simultaneous deaths, the policy itself and the LSDA both require Empire to distribute the $300,000 to Mrs. Chism and Ms. Hoffpauir only, unless there is "sufficient evidence" that Swain Jr. survived his father.

Relying on cases from outside the Fifth Circuit which address similar simultaneous death statutes, Empire argues that because Zarate-Swain's evidence of Swain Jr.'s survival is based on mere speculation and conjecture it does not amount to "sufficient evidence" as a matter of law. *See, Estate of Campbell v. Wolff*, 56 Or.App. 222, 641 P.2d 610 (Or.App. 1982); *Estate of Moran v. Schneberger*, 67 Ill.App.3d 576, 385 N.E.2d 79, (Ill.App. 1 Dist., 1978).

In *Estate of Campbell*, a husband and wife died when their boat capsized in a lake. *Estate of Campbell*, 641 P.2d at 612. The sole issue was whether there was "sufficient evidence" under the Oregon's Simultaneous Death Act to establish that one of them survived the other. *Id*. Aided by expert medical testimony, the defendants, whose claim depended upon the survival of the wife, presented the following circumstantial evidence which they argued established that the

7

husband died first: (1) the wife was in better health than the husband; (2) the husband had suffered a heart attack in the past, which increased the risk of sudden death from any sudden stress; (3) the husband was suffering from emphysema prior to his death; (4) the husband's physical activities had become curtailed in the years before his death; (5) the husband's blood alcohol content was .21 at the time of his death; (6) the positions of the bodies suggested that she struggled more and lived longer after the boat capsized. *Id* at 612-614.

The court in *Estate of Campbell* ruled that the defendants' evidence was insufficient because at best it established only that it was more probable than not that the wife survived the husband. In so holding, the court stated:

> In trying to determine whether one survived the other, we cannot engage in conjecture or guesswork. We cannot balance probability against probability. Survivorship is a question of fact which must be proved by evidence.

*Id* at 614 (citations and quotations omitted).

In *Estate of Moran*, an elderly woman and her adult son were found in a parked car in their garage. *Estate of Moran*, 385 N.E.2d 79, 80. Both had died as a result of carbon monoxide poisoning. *Id*. Following a bench trial on a petition to amend the table of heirship to include the deceased son, the trial court found that the son had survived his mother and accordingly granted the petition. *Id* at 81. The surviving children of the mother and the siblings of the deceased son appealed.

In support of its position, the estate of the deceased son presented evidence, including expert testimony, that his mother's advanced age of 79 and prior history of vascular problems made it more likely that she died first. *Id* at 83. Nevertheless, the appeals court found the estate's

arguments speculative and, therefore, insufficient to sustain its burden of proof. *Id.*

The cases cited by Empire make it clear that, to the extent that Zarate-Swain relies on speculative medical science and/or inferences drawn from Swain Sr.'s advanced age, that evidence alone does not constitute "sufficient evidence" under the "simultaneous death" jurisprudence of other states. However, Zarate-Swain does not rely exclusively upon such evidence since both Gabriel and Nicolas Zarate lived through and witnessed the events leading up to the passing of both their father and grandfather. Further, Empire's contention that neither Zarate brother had any idea about how much time passed between Swain Sr's and Swain Jr.'s disappearance is inaccurate. In addition to Gabriel Zarate's description of the sequence of events occurring after Swain Sr. drifted from the ice chest, he clearly estimated Swain Sr.'s disappearance at "half way through the trip" and Swain Jr.'s at "three quarters of the way through the trip." By his own estimation, Gabriel believed that this entire ordeal, from their departure that morning to their rescue that afternoon, lasted approximately eight hours. *Gabriel Zarate Depo.*, at p. 12, l. 12. The evidence in the record suggests that perhaps it lasted even longer. Thus, if Gabriel Zarate's testimony is credible, at least two hours elapsed between the disappearance of Swain Sr. and that of Swain Jr. He also testified that at some point after his grandfather had disappeared from the ice chest, Swain Jr. told the children that Swain Sr. was dead. At a minimum, these facts are sufficient to raise a genuine issue of material fact as to who died first.

Although the ultimate burden at trial falls on Zarate-Swain to prove, by a preponderance of the evidence, that there is sufficient evidence of Swain Jr.'s survival, that is not the case in the present motion. Instead, it is Empire's burden to show that there is no genuine issue of material fact with respect to the insufficiency of the evidence of survival. Said differently, to prevail on its

9

motion, Empire must show that Zarate-Swain cannot establish "sufficient evidence" that Swain Jr. survived Swain Sr. The fact that neither Gabriel nor Nicolas can pinpoint the exact moment when each man died does not mean that sufficient evidence of death cannot be established, for such a holding would mean that nothing short of direct evidence of death could serve to satisfy the "sufficient evidence" standard under the LSDA. Nothing in the language of the LSDA nor its jurisprudence suggests such an evidentiary limitation. Although Zarate-Swain may find it difficult to convince the ultimate trier of fact that Swain Jr. survived Swain Sr., the evidence submitted to date establishes a genuine issue of material fact sufficient to defeat the present motion.

*B) Penalties under LSA. R.S. 22:657 and LSA. R.S. 22:657*

Zarate-Swain seeks penalties from Empire under both LSA. R.S. 22:657 and LSA. R.S. 22:657 for failure to pay properly her portion of the claim. Because LSA. R.S. 22:657 does not apply to life insurance policies, it is inapplicable in this suit. However, LSA. R.S. 22:656 applies specifically to insurance policies and may apply to this case if, in addition to ultimately satisfying her burden of proof under the LSDA, Zarate-Swain can show that Empire was "without just cause" for failing to make payment to her in accordance with the statute. *See* LSA. R.S. 22:657 (Claims arising under life insurance shall be paid "within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.").

THEREFORE, for the reasons stated herein, Empire's motion for summary judgment [doc. 31] is DENIED.

FURTHER, IT IS ORDERED that defendant, Zarate-Swain's counterclaim for damages pursuant to LSA-R.S. 22:657 is DISMISSED.

Lake Charles, Louisiana, this 20 day of April, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE